**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RICHARD WATERHOUSE,

      Petitioner,

vs.                                                                         No. CIV 11-0685 JB/CG

TIMOTHY HATCH, Warden,

      Respondent.

**ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on: (i) the Proposed Findings and Recommended Disposition, filed on March 21, 2012 (Doc. 17)("PFRD"); and (ii) Petitioner's Objections to Proposed Findings and Recommended Disposition, filed April 4, 2012 (Doc. 18)("Objections"). In the PFRD, the Honorable Carmen E. Garza, United States Magistrate Judge, recommends that the Court dismiss Petitioner Richard Waterhouse's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed August 4, 2011 (Doc. 1)("Petition"). See PFRD at 2. Waterhouse timely filed objections to the PFRD. Respondent Timothy Hatch did not file a response to the objections, and the time for doing so has passed. Waterhouse objects to several of Judge Garza's findings, including: (i) that he had access to the victim, Melissa Lane, during the time charged in the indictment; (ii) that his attorneys' failure to discover evidence which would have impeached M. Lane's credibility did not prejudice him; (iii) that his attorneys' failure to present expert testimony did not prejudice him; and (iv) that his attorneys' erroneous advice regarding his eligibility for good time credit did not prejudice him. See Objections at 1-7. The Court has conducted a de novo review of the PFRD to determine the validity of Waterhouse's Objections. See 28 U.S.C. § 636(b)(1). Having considered the Objections, the relevant law, and otherwise being

fully advised in the premises, the Court will overrule Waterhouse's Objections and will adopt the PFRD.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition. See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . ."). Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Finally, when resolving objections to a magistrate judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 E. 30th St., Tulsa, Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas

v. Arn, 474 U.S. 140, 147 (1985)).  As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency."  One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986), superseded by statute on other grounds as stated in De Vargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377 (10th Cir. 1990); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit has held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  One Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'"  One Parcel, 73 F.3d at 1059.

In One Parcel, the Tenth Circuit, in accord with other courts of appeals, expanded the waiver rule to cover objections that are timely but too general.  See One Parcel, 73 F.3d at 1060.  The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of this waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.  The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report.  See S.Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H.R.Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report).  There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.  Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the

> Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added) (hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. See id. at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order"). The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. See Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 151-52 (footnotes omitted).

The Tenth Circuit has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel, 73 F.3d at 1060; Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations." (citations omitted)). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit also noted that the district judge had

-4-

decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal, because such action would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other circuits where district court elected to address merits despite potential application of waiver rule, but circuit court opted to enforce waiver rule).

In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F.App'x 795, 796 (10th Cir. 2007)(unpublished).

## ANALYSIS

Contrary to Waterhouse's arguments, there is evidence that he had access to M. Lane during at least some of the time charged in the indictment. Waterhouse's other alleged instances of ineffective assistance of counsel did not prejudice him. Accordingly, the Court will adopt the PFRD and overrule the Objections.

**I.    THE COURT WILL OVERRULE THE OBJECTION REGARDING ACCESS TO THE VICTIM.**

Waterhouse first objects to Judge Garza's finding that he had access to M. Lane during the period charged in the indictment. See Objections at 2-3. He contends that the record does not support a finding that he had access to M. Lane. See Objections at 2 ("These facts directly refute

the state district court's finding and this Court's recommended finding that Mr. Waterhouse had access to Melissa during this time.").

In her first order denying Waterhouse's amended state habeas petition, the Honorable Karen Townsend of the Eleventh Judicial District Court, County of San Juan, State of New Mexico, rejected Waterhouse's contention that he had no access to M. Lane. See Waterhouse v. Heredia, No. CV 2006-1090-8, Order Dismissing Amended Petition for Writ of Habeas Corpus at 66 (dated July 21, 2008), filed November 1, 2011 (Doc. 11-4)("State Order Dismissing Amended Petition"). Judge Townsend noted that the victim's mother, Carmen Spier, and M. Lane, moved back to Farmington, New Mexico on March 6, 2000, and that M. Lane "was clearly available to the Petitioner on a regular basis between March 6, 2000, and June 30, 2000."[1] State Order Dismissing Amended Petition at 66. Judge Garza adopted this finding, because, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), state court "factual determinations are presumed to be correct." 28 U.S.C. § 2254(e)(1). Accord Wilson v. Sirmons, 536 F.3d 1064, 1070-71 (10th Cir. 2008). Waterhouse may only rebut the presumption of correctness with "clear and convincing" evidence. 28 U.S.C. § 2254(e)(1).[2]

---

[1] The state court indictment of Waterhouse charged that the sexual assault occurred sometime between February 1, 2000, and June 30, 2000. See Sue A. Herrmann, Esq Affidavit ¶ 6, at 71 (dated August 28, 2006), filed November 1, 2011 (Doc. 11-5)("Herrmann Aff.").

[2] The presumption of correctness afforded under 28 U.S.C. § 2254(e)(1) appears to contradict 28 U.S.C. § 2254(d)(2), which provides that a petitioner may obtain habeas relief if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented." See generally, R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure 1044-1060 (6th ed. 2011)(discussing the ways in which both the Supreme Court and several Circuit Courts of Appeals have addressed the seeming inconsistency between the two sections). Any distinction between the two sections is immaterial, however, because the Court finds that resolution of Waterhouse's objection does not turn on any interpretive difference between the two sections. See Wood v. Allen, 130 S.Ct. 841, 849 (2010). Judge Townsend's finding that Waterhouse had access to M. Lane was not unreasonable in light of the facts adduced in the state court proceedings.

The uncontroverted evidence shows that Waterhouse and M. Lane were living in the same city between March 6 and June 30, 2000. Moreover, Sue Herrmann, the public defender assigned to represent Waterhouse on appeal, discovered that Waterhouse would go to Spier's trailer during those months so that he could pick up Julien, M. Lane's brother and Waterhouse's son, and Tessa, M. Lane's sister, and take care of them on the weekends.[3] See PFRD at 2. Based on that testimony, the Court will uphold Judge Townsend's finding that M. Lane was "clearly available" to Waterhouse.

Waterhouse argues that the record does not support Judge Townsend's findings. He points to the affidavit of his mother, Barbara Kreshon, who stated that Waterhouse would take care of Tessa and Julien, but not M. Lane or Andrea, M. Lane's other sister, on the weekends between March and June of 2000. See Objections at 2; Barbara Kreshon Affidavit ¶¶ 4, 6, at 59-60 (dated August 12, 2006), filed November 1, 2011 (Doc. 11-5)("Kreshon Aff."). Kreshon stated that Spier never let Waterhouse take care of M. Lane or Andrea, because the girls were always grounded. See Kreshon Aff. ¶ 6, at 60. He argues that this evidence was both relevant and exculpatory, and that his defense counsel, Ray Archambeau and Brady Dalley, were ineffective for failing to discover it. See Objections at 2-3.

That Waterhouse did not have custody of M. Lane on the weekends does not constitute "clear and convincing evidence" that Waterhouse had no access to M. Lane. Waterhouse and M. Lane lived in the same city for several months, and Waterhouse was a frequent visitor to Spier's trailer during that time. Accordingly, the Court will overrule Waterhouse's objection.

---

[3]Tessa, Julien, and, another sister, Andrea are all M. Lane's siblings, but their last names are not given in the record before the Court.

## II. THE COURT WILL OVERRULE WATERHOUSE'S OBJECTIONS REGARDING HIS COUNSEL'S FAILURE TO DISCOVER EVIDENCE TO IMPEACH M. LANE'S CREDIBILITY.

Waterhouse objects to Judge Garza's conclusion that his attorneys' failure to discover evidence which could have impeached M. Lane's credibility did not prejudice him. Mr. Archambeau and Mr. Dalley testified that they failed to interview many witnesses before recommending that Waterhouse accept the state's plea offer. See PFRD at 3-5. Neither attorney spoke with the victim's mother, Spier, until a public defender investigator named Ken Ellison interviewed her on the same day that Waterhouse was entering his guilty plea. See Herrmann Aff. ¶¶ 8-9, at 71-72. Herrmann related that, in her interview with Ellison, Spier stated that M. Lane told inconsistent stories about the sexual assault, first contending that it occurred in Utah and then later changing her story to that it occurred in Farmington. See Herrmann Aff. ¶ 9, at 72. Because of the inconsistent stories and the fact that M. Lane waited two years before reporting the assault, Spier told Ellison that she no longer believed her daughter's accusations. See Herrmann Aff. ¶ 9, at 72.

Judge Townsend considered this evidence, but decided that, even if it had been timely discovered, it would not have convinced Waterhouse to reject the proposed plea agreement and proceed to trial. See State Order Dismissing Amended Petition at 66-67. In relevant part, Judge Townsend noted that the evidence could only have been used to impeach M. Lane and that, on balance, the information cannot "realistically be seen as evidence that could have exonerated the Petitioner as he now contends." State Order Dismissing Amended Petition at 66-67.[4] Having

---

[4] As Judge Garza noted, this quote was not in Judge Townsend's final order denying Waterhouse's state habeas petition; it was in an earlier order denying relief. See State Order Dismissing Amended Petition at 67; Waterhouse v. Jaramillo, No. D-1116-CV-200601090-8, Second Order Dismissing Amended Petition for Writ of Habeas at 58- 63 (dated April 28, 2011), filed November 1, 2011 (Doc. 11-7)("Second Order"). Nevertheless, Judge Townsend's previous decision helps the Court "determine what arguments or theories supported or, as here, could have

considered the value of the impeachment evidence, Judge Garza stated that AEDPA deference precluded the Court from overturning Judge Townsend's decision. See PFRD at 17.

Waterhouse argues that Judge Garza was wrong to defer to Judge Townsend. He asserts that, because there was no physical evidence to support M. Lane's allegations of abuse, the trial would necessarily have focused on M. Lane's credibility and that any piece of impeachment evidence would have been of paramount importance. See Objections at 3-4 (citing Vasquez v. Bradshaw, 345 F.App'x 104, 115 (6th Cir. 2009)(unpublished); Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003)).

The focus of Waterhouse's objection in federal court should not be whether discovery of the impeachment evidence would have caused him to reject the plea agreement, but whether Judge Townsend's decision that he would not have is "contrary to, or involved an unreasonable application of clearly established [Supreme Court precedent]." 28 U.S.C. § 2254(d)(1). See also Harrington v. Richter, 131 S.Ct. 770, 785 (2011)(noting that, on federal review, the question is not whether an attorney's performance fell below the standard in Strickland v. Washington, 466 U.S. 688 (1984),[5] but whether the state court's application of the Strickland v. Washington standard was

---

supported, the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).

[5]In Strickland v. Washington, the Supreme Court of the United States established a two-part test for determining whether a criminal defendant's counsel was ineffective:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding] . . . .

Strickland v. Washington, 466 U.S. at 687.

unreasonable). As the Supreme Court has long held, the AEDPA instructs federal judges to accord state courts decisions a significant amount of deference. See Woodford v. Visciotti, 537 U.S. 19, 24 (2002)(stating that AEDPA deference "demands that state-court adjudications be given the benefit of the doubt."). A state court decision must be more than incorrect before a federal court may overturn it; the state court decision must be objectively unreasonable. See Williams v. Taylor, 529 U.S. 362, 410 (2000). Put another way, the AEDPA mandates that a state court's decision be upheld "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. at 786 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). This principle is particularly true when the state habeas petition alleges ineffective assistance of counsel, because the ineffective assistance standard is, by necessity, general. See Strickland v. Washington, 466 U.S. at 688 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of . . . the range of legitimate decisions regarding how best to represent the criminal defendant."). As the Supreme Court has noted in federal habeas cases, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. at 664.

The cases to which Waterhouse cites for his argument that impeachment evidence is of critical importance in molestation cases both involved jury trials and were not cases in which the defendant entered into an early guilty plea. See Vasquez v. Bradshaw, 345 F.App'x at 107 ("The jury found Vasquez guilty."); Eze v. Senkowski, 321 F.3d at 112 ("Once again, before us now is someone convicted of child sexual abuse related crimes whose quality of trial representation causes us serious concern."). This case is not one where a defendant's attorneys conducted no investigation. In that limited time, Mr. Archambeau spoke with several police witnesses, and Mr. Dalley met with Waterhouse, watched M. Lane's safe-house interview, and interviewed M. Lane.

See PFRD at 5.  Mr. Dalley thought that M. Lane appeared credible and consistent.  See PFRD at 5.  The investigation was limited, however, because the plea offer came approximately one week after Mr. Archambeau and Mr. Dalley were assigned to the case.  See PFRD at 5.  The district attorney offered Waterhouse the opportunity to make an Alford[6] plea, which reduced his potential sentencing exposure from 103.5 years to twenty-six years.  See PFRD at 5.  Defense attorneys are in a precarious position.  The Supreme Court has held that a defense attorney may be ineffective if they allow a plea offer to lapse, see Missouri v. Frye, 132 S.Ct. 1399, 1408-09 (2012)(holding that "defense counsel has [a] duty to communicate formal offers from the prosecution" and that, where "[a]s a result of that deficient performance, the offers lapsed," the question is where any prejudice resulted from the breach), and that counsel may be ineffective if they fail to adequately investigate before making a strategic choice, see Strickland v. Washington, 466 U.S. at 690-91 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").  In recognition of the difficult situation in which these cases place defense counsel, the Supreme Court recently held that:

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function.  Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place.  Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve.  A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case

---

[6]See North Carolina v. Alford, 400 U.S. 25, 37 (1970)(holding a defendant may plead guilty and "consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime").

>is getting weaker not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

Premo v. Moore, 131 S.Ct. 733, 741 (2011). The Supreme Court further has warned that "habeas courts must respect their limited role in determining whether there was a manifest deficiency in light of the information available to counsel" and that "ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect." Premo v. Moore, 131 S.Ct. at 741.

In this case, the Court agrees that Judge Townsend's decision was neither contrary to, nor an unreasonable application of, the Strickland v. Washington standard. While it is true that the information gleaned from Spier could have served to impeach M. Lane, it was not directly exculpatory. This situation is one where fairminded jurists could disagree as to the correctness of Judge Townsend's decision, and, for that reason, the Court will overrule this objection to the state court decision. See Harrington v. Richter, 131 S.Ct at 787 ("[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.")(citations omitted)(internal quotation marks omitted). Furthermore, the Court believes that, given the early point in Mr. Archambeau's and Mr. Dalley's representation in which they received a plea offer, the lack of further investigation does not render their efforts ineffective. The Alford plea offer that Waterhouse received and the eighty-year reduction in his sentencing range appears to have been, with the information available to counsel at the time, a good deal at the time it was offered. "In the case of an early plea, neither the prosecutor nor the defense may know with much certainty what course the case may take." Premo v. Moore, 131 S.Ct. at 742. Here, the early plea cut off the investigation, and Waterhouse's attorneys could not have anticipated that Spier would indicate that she no longer believes M. Lane's accusation. Based on the

information before them at the time the plea was offered, counsel were not ineffective for recommending the plea deal.

### III.     THE COURT WILL OVERRULE WATERHOUSE'S OBJECTION RELATED TO HIS COUNSEL'S FAILURE TO SECURE EXPERT TESTIMONY.

Waterhouse's third objection relates to his attorneys' failure to consult with an expert witness. See Objections at 4-5. Waterhouse has argued that his attorneys should have had an expert evaluate M. Lane, and that, had they done so, they would have discovered that she has "a truth-telling problem" and that she had a motive to fabricate the charges against Waterhouse. See Brief in Support of Petition for Relief from Conviction and Sentence by a Person in State Custody at 2-3, 13-14, filed August 4, 2011 (Doc. 2)("Petition Brief"); Objections at 4.

Judge Garza rejected this argument, because Waterhouse had not presented any evidence demonstrating what the hypothetical expert witness would have concluded about M. Lane. See PFRD at 19-20. She stated that the Court could not grant habeas relief based on Waterhouse's speculation that an expert would have found M. Lane to be untruthful. See PFRD at 19.

Waterhouse's objections do not address Judge Garza's concerns regarding the speculative nature of his claims. He does no more than repeat his argument that an expert would have found M. Lane to be a self-serving liar. In support, he notes that M. Lane made similar sexual assault allegations against her father, Joel Lane; that a psychiatrist evaluated M. Lane in preparation for Mr. Lane's trial; and that the psychiatrist found that M. Lane would lie to get what she wanted. See Petition Brief at 3; Objections at 4. He argues that the M. Lane evaluation happened "close in time to [my] case" and that any evaluation of M. Lane "likely would have been the same [as during the Joel Lane case]." Petition Brief at 3; Objections at 4. The Court is unpersuaded.

The evidence does not support Waterhouse's argument that the M. Lane evaluation happened close in time to his own case. Criminal charges were not filed against J. Lane until September 2005.[7] J. Lane's attorney did not file a motion for psychological evaluation until December 29, 2005, and did not file a motion to obtain M. Lane's records from the New Mexico Children Youth and Family Department until February of 2006. The expert evaluation in J. Lane's case could not have occurred until sometime in the spring of 2006, which would have been almost three years after Waterhouse pled guilty. Based on the significant time difference between the two cases, the Court cannot assume that an evaluation in Waterhouse's case "would have been the same" as in J. Lane's case. The Court is left with speculation as to the potential value of expert testimony in Waterhouse's case and, as Judge Garza detailed, speculation is not grounds for habeas relief. See PFRD at 19-21; Rodriguez v. Roberts, 371 F.App'x 971, 976 (10th Cir. 2010)(unpublished)("Others, such as Rodriguez's allegation that the prosecutor fabricated evidence, are speculation."); United States v. Fabiano, 42 F.App'x 408, 413 (10th Cir. 2002)(unpublished)("The general claim that an unidentified expert could have testified that any number of internet problems could have prevented him from receiving e-mail messages is too speculative to support habeas relief."). The Court also relies again on the Supreme Court's comments in Premo v. Moore. There are risks attached to pleading guilty, and one of the risks that the defendant takes in accepting a plea offer is that favorable information might later develop. See Premo v. Moore, 131 S.Ct. at 741 ("A risk . . . is that an early plea bargain might come before the prosecution finds its case getting weaker, not stronger."). There can be no certainty that a defense expert would have made the same findings as the one hired in J. Lane's case

---

[7] See State v. Lane, D-1116-CR-200500898, available at http://www2.nmcourts.gov/caselookup. The "Register of Actions Activity" heading indicates that charges were filed against J. Lane on September 7, 2005.

regarding M. Lane's truthfulness.  The Supreme Court has held that it is within the bounds of a reasonable judicial determination for a state court to conclude that defense counsel could follow a strategy that did not require the use of experts when there was blood evidence.  See Harrington v. Richter, 131 S.Ct. at 789 ("Here it would be well within the bounds of a reasonable judicial determination for the state court to conclude that defense counsel could follow a strategy that did not require the use of experts regarding the pool in the doorway to Johnson's bedroom.").  The Court believes the state court was similarly reasonable here in finding that Mr. Archambeau and Mr. Dalley were not ineffective in failing to obtain an psychological evaluation of M. Lane pre-plea.

There is another problem with the evidence that Waterhouse now wishes his attorneys had obtained.  Not every judge might permit the evaluation and evidence that the Honorable John Dean, Jr., Chief District Judge for the Eleventh Judicial District Court, admitted in J. Lane's case.[8]  Judge Townsend presided over Waterhouse's case and she might not have allowed such expert testimony, because the law is hostile to experts getting on the stand and vouching for a witness' credibility. See United States v. Ganadonegro, 805 F.Supp.2d 1188, 1213 (D.N.M. 2011)(Browning, J.)(noting that the Tenth Circuit has found that "the credibility of witnesses is generally not an appropriate subject for expert testimony"); State v. Torres, 137 N.M. 607, 616, 113 P.3d 887, 886 (Ct. App. 2005)("Our Supreme Court held that the trial court committed plain error in admitting the testimony and stated that an expert commenting on the credibility of the alleged victim of sexual abuse was improper.").  It is speculation that Waterhouse would have found an expert who would testify that to M. Lane's credibility and that the court would have admitted such evidence.  Accordingly, the Court will overrule the objection.

---

[8] See State v. Lane, No. D-1116-CR-200500898, available at http://www2.nmcourts.gov/caselookup/app.

## IV.     THE COURT WILL OVERRULE THE OBJECTIONS RELATED TO ERRONEOUS SENTENCING ADVICE.

Waterhouse's fourth objection relates to his attorneys' incorrect advice that the Earned Meritorious Deduction Act, N.M.S.A. 1978 § 33-2-34 ("EMDA"), would not apply to his sentence. See Objections at 6-7. Waterhouse's attorneys represented that he would serve fifty percent of his sentence, instead of the eighty-five percent he will actually have to serve.

Judge Townsend found that this error did not prejudice Waterhouse, because there was no evidence that he placed much emphasis on his eligibility under the EMDA. See Second Order at 62. Additionally, she found that the error would not have affected his decision to plead guilty, because he "was equally misinformed about good time eligibility whether he was sentenced pursuant to a guilty plea or . . . after conviction at one or more trials." Second Order at 62 n.1. Judge Garza concurred, noting that, because his attorneys had not investigated his case and had told him he would likely be convicted at trial, there is no likelihood that accurate advice about the EMDA would have caused him to reject the state's plea offer. See PFRD at 21-23.

Waterhouse asserts that, as a matter of law, erroneous sentencing advice resulting in a significant increase in jail time suffices to demonstrate prejudice under the Strickland v. Washington standard. See Objections at 6 (citing Glover v. United States, 531 U.S. 198 (2001); Julian v. Bartley, 495 F.3d 487, 498 (7th Cir. 2007); Moore v. Bryant, 348 F.3d 238 (7th Cir. 2003); Magana v. Hofbauer, 263 F.3d 542 (6th Cir. 2003)). It is well accepted that an increased sentence because an attorney misread state statutes may rise to the level of ineffective assistance of counsel. See Glover v. United States, 531 U.S. at 203-04. The question here is whether Judge Townsend's decision that accurate advice about the EMDA would not have changed Waterhouse's decision to plead guilty is

either contrary to, or an unreasonable application of, federal law. Judge Garza found that Judge Townsend did not unreasonably apply federal law, and the Court concurs.

As Judge Garza detailed, Waterhouse pled guilty, because his attorneys did not have a theory of defense and he believed he would be convicted at trial. See, e.g., PFRD at 22. Waterhouse concluded that his choice was either to plead guilty and to face a maximum of twenty-six years, or to proceed to trial and to face over one-hundred years in jail. See PFRD at 22; Second Order at 59-60. Faced with the choice of either pleading guilty or facing likely conviction at trial, the Court agrees with both Judge Townsend and Judge Garza that the availability of good time credits under the EMDA was not a significant factor in Waterhouse's decision to plead guilty. The Court agrees with Judge Townsend and with Waterhouse that Mr. Archambeau and Mr. Dalley made an error when they asserted that the EMDA would not apply to him. The Court also notes that the parties' plea agreement did not contemplate the EMDA's application. See Plea and Disposition Agreement at 5 (dated April 25, 2003), filed November 1, 2011 (Doc. 11-1)("The Crimes being pled to occurred before § 33-2-34[, the EMDA] was implemented and therefore does not apply."). The Court is troubled that Waterhouse entered this plea under the assumption that he would only serve fifty percent of his sentence. The Court is often confronted with similar counsel errors, because parties sometimes try to stipulate to the applicable law, and the law is something for the courts to decide. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803)("It is emphatically the province and duty of the judicial department to say what the law is."); United States v. Tilga, 824 F.Supp.2d 1295, 1322 (D.N.M. 2011)(Browning, J.)("[R]ather than simply accept the parties' stipulated tax loss calculation, the Court will decide whether federal law permits defendants to claim the foreign tax credit post-indictment.").

The standard for federal habeas review of a state conviction provides that the state court's decision must be "contrary to" or "an unreasonable application of" clearly established federal law, as established by the Supreme Court.  28 U.S.C. § 2254(d)(1). The Court cannot say that Judge Townsend acted unreasonably or contrary to Supreme Court precedent when she determined that Waterhouse had not established the second prong of Strickland v. Washington -- prejudice. See Second Order at 62 ("Although counsel's advice about the Petitioner's 'good time' eligibility while in prison was clearly erroneous, the Petitioner never showed that he placed a particular emphasis on that eligibility in deciding whether to plead guilty."). In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court held that, to satisfy the prejudice prong, a petitioner must make allegations which support a finding that the erroneous parole information impacted the decision to plead guilty.  See 474 U.S. at 60 ("He alleged no special circumstances that might support the conclusion that he place particular emphasis on his parole eligibility in deciding whether or not to plead guilty."). Waterhouse's own arguments further support the state court finding that the erroneous good-time information did not impact his decision to plead guilty. In his Amended Petition for a Writ of Habeas Corpus (dated July 7, 2007), filed November 1, 2011 (Doc. 11-4)("Amended Petition"), Waterhouse asserted, in his factual background section:

> Even though he consistently maintained his innocence, Mr. Waterhouse felt compelled to plead no contest because his attorneys told him that he could not win a credibility contest between himself and the complaining witness, especially in light of his previous felony convictions for theft.  Mr. Waterhouse also felt coerced to enter his plea of no contest because he felt his attorneys were completely unprepared for trial.

Amended Petition at 6.  Although, in a later argument, Waterhouse stated that he would not have pleaded guilty had he known he was subject to the EMDA, see Amended Petition at 16 ("Mr. Waterhouse would not have pleaded guilty and would have insisted on going to trial."), the emphasis

of the Amended Petition was on the failure to investigate, as made clear in the Amended Petition's factual background, and the Amended Petition does not allege any special circumstances that might support the statement that he would not have pled guilty, see Hill v. Lockhart, 474 U.S. at 60.  The PFRD notes that Mr. Dalley did not testify that Waterhouse placed much emphasis on whether the EMDA applied when deciding to plead guilty.  See PFRD at 22.  Waterhouse has not shown that, but for his attorneys' error, he would have refused to accept the state's plea offer and insisted on going to trial.  Absent such a showing of prejudice, the Court cannot say that Judge Townsend's holding was contrary to, or an unreasonable application of, federal law.  Accordingly, the Court will overrule Waterhouse's objection.

**IT IS ORDERED** that (i) the Proposed Findings and Recommended Disposition, filed on March 21, 2012 (Doc. 17), are adopted; (ii) the Petitioner's Objections to Proposed Findings and Recommended Disposition, filed April 4, 2012 (Doc. 18), are overruled; and (iii) the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed August 4, 2011 (Doc. 1), is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Richard Waterhouse
Northeast New Mexico Detention Facility
Clayton, New Mexico

    *Plaintiff pro se*

Gary K. King
  Attorney General for the State of New Mexico
Margaret E. McLean
  Assistant Attorney General
Santa Fe, New Mexico

    *Attorneys for the Defendant*